### CHRISTENSEN v. BRAGG–KLIESRATH CORPORATION.
### No. 571.

District Court, N. D. Indiana, South Bend Division.

June 3, 1937.

S. Carlisle, of South Bend, Ind., and Richey & Watts, of Cleveland, Ohio, for plaintiff.

Louis Prevost Whitaker and Livingston Gifford, both of New York City, M. W. McConkey, of Chicago, Ill., and Jerome R. Cox and Seebirt, Oare, Deahl & Omacht, all of South Bend, Ind., for defendant.

SLICK, District Judge.

Suit for infringement on reissued patent, No. 19,469, granted to Christensen on brake mechanism for automobiles and similar vehicles February 19, 1935, on an application filed January 7, 1935. The reissue was of original patent, No. 1,291,765, granted January 21, 1919, on an application filed September 4, 1914.

The principal defenses claimed by defendant are:

1. Prior art anticipation.

2. That the claims of the reissued patent are for a different invention than that disclosed in the original patent.

3. Noninfringement.

4. Invalidity of the reissued patent because of noncompliance with the reissue statute and the rules and practice of the Patent Office.

5. Laches.

As in this opinion it is held that the reissued patent is invalid because it was issued for a different invention than that disclosed in the original patent, and did not comply with the requirements of the reissue statute and rules and practice of the Patent Office, and further that there is no infringement, it will not be necessary to discuss the prior art anticipation or the question of laches.

The original patent to Christensen embraced a braking mechanism for automobiles and similar vehicles to be operated by the conventional foot pedal which applies mechanical braking power and a power brake mechanism using compressed air supplied by an air compressor, tank, power cylinder, and piston.

Claims 2 and 3 of the original patent included a scheme to connect the mechanical with a power brake through the use of what is commonly termed an engineer's

valve, so that, when the pedal is depressed in the ordinary way, the mechanical brakes are first applied, and, if the pedal is further depressed, the power braking mechanism is called into action and applies the power brake first to the front wheels of the vehicle.

The original patent was issued in 1919 and the evidence does not disclose that plaintiff, or any one else, ever made a device following the teachings of the patent for practical operation. It was therefore what is commonly called a "paper patent," and should be strictly, not liberally, construed. Standard Oil Company v. Globe Oil & Refining Company (C.C.A.) 82 F.(2d) 488.

Christensen conceived a plan to connect the foot brake pedal with the power brake mechanism by means of the operation of an engineer's valve so that when the brake pedal is depressed it applies mechanical braking power and at the same time operates the engineer's valve to connect the power braking mechanism. Which operates first, the mechanical or the power system, is one of the disputed questions in this case. The specifications and drawings of Christensen indicate that the mechanical brake is applied first, followed by application of the fluid or power brake through the operation of the engineer's valve.

An engineer's valve is a mechanical contrivance, usually cylindrical, and having three combinations. It is connected with the atmosphere at one point and with power pressure at another point. There are "off," "lap" and "on" positions. In the "off" position the atmosphere connection is open, but the pressure connection is closed. In the "lap" position the atmosphere and power connections are closed. In the "on" position the connection to the atmosphere is closed, while the pressure connection is open. The openings, or "ports" as they are called, are for the admission either of air or pressure fluid, and the operator, if pressure is desired, closes the air "port" and opens the pressure "port." In doing this he must turn the valve so as to pass entirely through the "lap" position. To release the braking mechanism, the reverse of the above movement is required, i. e., the pressure "port" is closed and the air "port" opened, passing back through the "lap" position. To hold any attained and desired brake pressure, the operator reverses the valve far enough to close the pressure port, but not far enough to admit any atmospheric pressure. This is the "lap" position.

Plaintiff introduced in evidence a device (Plaintiff's Exhibit 15) which plaintiff said had installed therein a valve such as is common on streetcars for operating doors by air. This valve was represented as an engineer's valve that just "happened to be one that we had handy," one "that had been sent in as a sample." This exhibit (Plaintiff's Exhibit 15) was so set up at the trial that pressure must be applied to the pedal by the hand and very slight jiggling of the hand operated foot pedal produced a singular and rather confusing manifestation.

A Ford car was presented for experimentation on the street, and plaintiff represented that it was equipped with a braking device built upon plaintiff's patent, and contained a valve like the valve in Plaintiff's Exhibit 15. The car operated quite similarly to Exhibit 15. Then it was discovered that in the valve in Plaintiff's Exhibit 15, originally a conventional engineer's valve, the part constituting the "lap" position had been machine tooled away to the extent of about two-thirds of the "lap" or part, rendering it impossible to hold the valve in a definite "lap" position, and accounting for the strange action of Plaintiff's Exhibit 15.

Now if, as plaintiff says, the Ford car mechanism contained an engineer's valve similar to the one in Plaintiff's Exhibit 15, neither could have any probative value. As defendant's counsel suggest in their brief at page 48, "the kindest thing that can be said about it is that it is but an experimental device which would commercially prove inoperative," and if Plaintiff's Exhibit 15 is commercially inoperative and the braking device on the aforementioned Ford contained within its operating mechanism a valve like the one in Plaintiff's Exhibit 15, there can be no reliance on the experiments made with the Ford car. It is as commercially inoperative as Plaintiff's Exhibit 15.

Plaintiff in his reply brief accuses defendant's counsel of attempting to "becloud the issue" by raising the cry of "wolf." It is true that the questions to be decided are of the validity of the reissued patent and infringement.

498

When it is considered that plaintiff waited sixteen years after obtaining his patent to apply for a reissue, and then made such application for the avowed purpose of bolstering up a lawsuit which he proposed bringing, the court is moved to inquire into the good faith of the showing and application for the reissue in suit.

It is quite clear that the reissued patent describes, not the original invention of Christensen, but a different device not mentioned in the original disclosures.

The original patent, taken together with the drawings and specifications, describes a brake mechanical combination of power and pressure brake operated by a conventional foot pedal, and when pressure is applied to the pedal the mechanical brakes immediately function, and if pressure is continued on the pedal, the power brake goes into action first on the front wheels. This is not the action of the accused device in which the power brake functions first, followed by application of the mechanical brake system. It is true that claim 5 of the reissue states that the foot pressure causes "application of the power to said brakes consequent upon first movement of said pedal, and upon further movement of said pedal, effecting manual brake application," but it must be remembered that this claim was written sixteen years after the issuance of the original patent, after advice that the claims in the original patent needed clarification, if infringement was to be proven, by plaintiff's counsel and patent experts, with the accused device before them and with the thought that this suit was to be brought and it "would be useful" and "very important to be properly used in the infringement suit about to be brought" against this defendant. This gives ample justification for the testimony of defendant's expert that "Claim 5 would read on defendant's device in my opinion as a pure matter of language. I think it was so intended. But the language does not read on the structure of the patent itself."

At the outset we are met with the challenge to the validity of this reissued patent. The reissue (No. 19,469) was granted February 19, 1935, on application filed January 7, 1935, the original patent having been issued January 21, 1919, on an application filed September 4, 1914.

The showing in the Patent Office for the reissue on the question of inadvertence, accident, or mistake was contained in an affidavit made by plaintiff and is as follows, to wit:

"Deponent further says that in November, 1933, suit was brought to enjoin the infringement of claims 2 and 3 of deponent's patent; that the preliminary matters of the suit and the time required for bringing to trial required something more than a year and that in December, 1934, the U. S. District Court in Cleveland referred the cause to a Master, and the time for trial was set in January, 1935; that in preparation for the trial Mr. Walter T. Fishleigh, consulting engineer and patent expert, was employed by the Plaintiff, the deponent, who on substantial completion of his work in interpreting the claims by charts and analysis to show infringement and to illustrate distinctions from the prior art, pointed out that certain functions and elements of Claims 2 and 3, while clearly apparent or implied therein, were not specifically stated, and that it then became apparent to deponent and his attorney, Justin W. Macklin of Cleveland, that additional claims further more specifically defining the patentable invention in the original patent, would be useful in a clear understanding of the meaning of the present claims 2 and 3, that the occasion of such discussion was at a conference of said Fishleigh, deponent and his attorney, said Macklin, on January 3, 1935, and that thereupon deponent acted at once to dismiss the pending suit without prejudice and with the thought of bringing a new suit, at the earliest possible moment following reissuance of the said preferred original patent, and against the manufacturer of the infringing devices in South Bend, Ind.

"Deponent further says that theretofore he had been repeatedly assured by various prominent patent attorneys, throughout the life of the patent, that claims 2 and 3 were entirely sufficient and could and should be read in the light of the specification, and that the functions and elements were clearly apparent therein; but he now believes that he is entitled to more specific and narrower claims in addition to claims 2 and 3, and that these will be very important to be properly used in the infringement suit about to be brought against the manufacturer of the infringing brake devices, the infringement by which was complained of in the Cleveland suit now dismissed, by use and sale in the jurisdiction

of the District Court for the Northern District of Ohio."

■ The facts recited in this affidavit, like facts well pleaded in a challenged pleading, should be taken as true and may be summarized as follows:

1. In November, 1933, plaintiff brought suit in Ohio for infringement of claims 2 and 3 of his original patent.

2. In December, 1934, the case was referred to a master and trial was set in January, 1935.

3. In preparing for trial plaintiff employed Mr. Walter T. Fishleigh, a patent expert, who made charts and analysis to show infringement and distinguish from the prior art.

4. Said patent expert pointed out that certain functions and elements in said claims 2 and 3, while clearly apparent or implied, were not specifically stated.

5. It became apparent to plaintiff and his counsel that additional claims would be useful in a clear understanding of said claims 2 and 3.

6. This conclusion was reached in conference between plaintiff, his legal counsel, and his patent expert.

7. Plaintiff then dismissed his pending suit for infringement for the purpose of obtaining a reissue and bringing this suit.

8. Plaintiff had been repeatedly assured by various prominent patent attorneys throughout the life of the original patent that said claims 2 and 3 were entirely sufficient, could and should be read in the light of the specifications, and that the functions and elements were clearly apparent therein.

9. At the time of applying for the reissue plaintiff believed he was entitled to more specific and narrower claims in addition to said claims 2 and 3.

10. These more specific and narrower claims would be very important in a suit about to be brought, which is the present pending suit.

A careful study of the contents of the affidavit as above outlined discloses not a word concerning inadvertence, accident, or mistake, but it does show affirmatively that various prominent patent attorneys had regarded the claims in plaintiff's patent as entirely sufficient for a period of sixteen years. Indeed, there was no showing in the Patent Office, on the application for reissue, that these opinions of these prominent patent attorneys were not entirely justified and correct. No court has held to the contrary. No contrary opinion of any patent attorney, prominent or otherwise, was cited. The patent expert, employed by plaintiff, said, according to plaintiff's affidavit, that the functions and elements contended for by plaintiff were clearly apparent or implied, although not specifically stated. If true, the patent was valid and no desire on the part of the plaintiff to rewrite his claims to include defendant's device could or would, under the reissue statute, justify the granting of the reissue.

The statute (35 U.S.C.A. § 64) provides for a reissue only when a patent is inoperative or invalid by reason of a defective or insufficient specification (the old specifications were used in applying for the reissue) or because the patentee has claimed more than he had a right to claim, provided there was error from inadvertence, accident, or mistake, and there was no fraudulent or deceptive intent. There was no evidence submitted before the Commissioner of error from inadvertence, accident, or mistake.

■ Rule 87D of the rules and practice promulgated by the Patent Office specifically provides that an applicant for a reissue shall particularly specify the errors constituting inadvertence, accident, or mistake, and "how they arose or occurred." If there was error, how did it occur? The evidence before the Commissioner is silent on this subject. The affidavit does pretend to state that an alleged deficient claim was submitted and granted, but there is no showing whatever, either that there was error or how it occurred. This, in my view of the practice, is fatal, and the reissue was improvidently granted. In fact, it was granted in the teeth of both the statute and the rules of practice and without any evidence to justify it. In addition to this, the reissued patent covers a different invention from the invention claimed in the original patent. For these reasons, the reissued patent is void.

Defendant is the owner of Dickson patent, No. 1,076,198, which was granted about six years before the original patent, No. 1,291,765, upon which the reissued patent was granted, issued. The Dickson invention embraces the principle that, when an internal combustion engine idles, a par-

500

·tial vacuum is produced in the intake manifold, producing power for braking without lessening the efficiency of the motor. This was a new and valuable contribution to the art. Bragg-Kliesrath Corporation v. Farrell (C.C.A.) 36 F.(2d) 845.

The brake mechanism embracing the use of the vacuum principle was developed by defendant and has been in commercial use since 1925. It is simple in construction, mechanically sound, easy to install, and relatively cheap. It has had great commercial success, nearly 400,000 units having been sold in about eleven years. Most manufacturers of pleasure cars have used this device from time to time; General Motors, Ford, Packard, Chrysler, and others; Mack, Pierce and International trucks also use it. Insurance rates have been reduced on cars using this equipment. During all this time no one manufacturer has adopted or used plaintiff's braking invention, which has never been reduced to practice, and is cumbersome and expensive to install.

■ Plaintiff's device depends upon an engineer's valve and a lost motion connection, whereas defendant's device has a specially constructed valve operated by means of a diaphragm which presses against a valve seat, admitting air through holes in the diaphragm. ,This valve and diaphragm ,have a limited amount of lost motion and permit the application, when the brake pedal is first depressed, of power pressure, followed, if the pedal is depressed further, by mechanical braking. In this very important respect the accused device and the specifications in plaintiff's original and reissued patents are entirely dissimilar in their operations. Defendant does not infringe either the original or the reissued patent. The case is dismissed for lack of equity. Costs are taxed against the plaintiff.